IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WALTER J.D. MOFFETT,

                 Plaintiff,             OPINION AND ORDER

   v.

                                         18-cv-360-wmc

MICHAEL A. DITTMAN, RICHARD RAEMISCH,
PESJKAR, RICKY, RYAN, HAAG, JOHN DOE #1,
JOHN DOE #2, BUETTNER, WEBBER, BORTEZ,
GOLDSMITH, ZOCH, MILLER, DOOREY, GAMBARO,
BONOFETCH, STRAHOTA, SCHIDTKNECHT,
FRY, ALIC ROGERS, CYNTHIA NEUHAUSER,
VIEIRA, REWEY, GOHDE, MARY LEISER,
BATES, KRIST DEYOUNG, MITCHELL, ROEKER,
PIFZL, ZIGGLER, PROCKNOW, DANIEL FRISCH,
JANE DOE #1, SYED, JOHN DOE #3, GERRY,
JANE DOE #2, JULSON, ALLDS, DUNDERSON,
WELZEL, CULBERTSON, MORGAN, GOURLIE,
GAVINSKI and MARGAN,

                 Defendants.

---

*Pro se* plaintiff Walter J.D. Moffett, who is currently incarcerated at the Wisconsin Secure Program Facility ("WSPF"), filed this lawsuit pursuant to 42 U.S.C. § 1983, claiming that his constitutional and state law rights were violated in numerous ways between 2015 and 2018, when he was incarcerated at Columbia Correctional Institution ("Columbia"). He names 48 defendants who are or were employed by the Wisconsin Department of Corrections ("DOC") in various capacities. While Moffett's complaint is ready for screening as required by 28 U.S.C. § 1915(e)(2), 1915A, his complaint involves too many claims and defendants to proceed in one lawsuit. Accordingly, the court will dismiss his complaint without prejudice, but give Moffett an opportunity to choose which claims he wishes to pursue in this case, which claims he wants to pursue in a different case, and which claims he wishes to dismiss without prejudice to him refiling them at a later

date.

OPINION

Plaintiff's allegations can be grouped into at least ten different lawsuits:

**Lawsuit #1:** In August of 2015, Moffett was attempting to mail a package to a court, but was notified that he did not have sufficient funds to pay the postage fee. Moffett claims that defendant Culbertson was responsible for improperly taking all his money out of his prison account and sending it to a state court to pay court costs. Moffett claims that Morgan knew about this incident and failed to correct it.

**Lawsuit #2:** On October 15, 2015, defendants Ryan and Haag were involved in a scheme to retaliate against him by opening and reading his legal mail.

**Lawsuit #3:** On January 21, 2016, Moffett was having a meeting with a mental health care professional that resulted in various officers intervening and removing him from the meeting using excessive force. He also alleges that when the officers restrained him, they placed him in a hood resembling a Ku Klux Klan hood that restricted his breathing. Moffett alleges that defendants Gambaro, Pesjkar, John Doe #1, John Doe #2, Ricky, Buettner, Raemisch, Dittman, Fry, and Webber were all involved.

**Lawsuit #4:** Between January and May of 2016, Moffett was housed in a segregation unit. He claims that various defendants were involved in a conspiracy against Moffett to deny him the same opportunities as other prisoners. For example, Moffett claims that he was denied a drinking cup, showers, library time, and recreation; had no access to medical and mental health care; and was moved to a unit that was not wheelchair accessible. He claims that defendants Strahota, Bortez, Goldsmith, Miller, Vieira, Rewey, Roeker, Pifzl, John Doe #3, Gerry, Jane Doe #2, and Julson were involved in denying him access to necessities. He further claims that Morgan, as a supervisor, knew about the conditions but failed to intervene.

Moffett claims that he alerted various health care providers and a social worker (Procknow, Syed, Mitchell, Bates, DeYoung, Leiser, Ziggler and Gambaro) to his placement in segregation, complaining that his placement there required him to drag himself across the cell floor in a plastic chair because his cell was not wheelchair accessible. None of these defendants stepped in to adjust his cell conditions. Moffett also alleges that defendant Gohde, the HSU Manager, should have been aware of his issues but did not try to transfer him out of the segregation unit.

**Lawsuit #5:** On June 1, 2016, Moffett was moved from the segregation unit to general population and was refused adequate housing to meet his needs, since it was not wheelchair accessible. He claims that defendant Doorey was responsible for moving him to an inadequate unit and failed to take any steps to improve his conditions.

In general population, defendant Zoch harassed Moffett in various ways, including removing his wheelchair, though it is unclear when Zoch took it away. Defendant Schmidtknecht, the unit manager during Moffett's time in general population, thwarted Moffett's ability to achieve his legal goals by keeping him confined in his cell. Defendant Gavinski was aware of these conditions and failed to intervene. Defendant Mitchell refused to look into Moffett's housing requirements, broke his dentures, yelled at other prisoners for trying to help Moffett and enjoyed watching him crawl up and down steps. Defendant Bates knew that Moffett was struggling but did not take any steps to move him to a wheelchair accessible unit.

**Lawsuit #6:** On some unspecified date, defendant Neuhauser improperly transferred all money in Moffett's prison account to a state court. Moffett claims she did this to retaliate against him after he filed a civil complaint against other defendants.

**Lawsuit #7:** Defendant Leiser, an inmate complaint examiner, mishandled Moffett's inmate complaints about the various ways in which Columbia staff were violating his rights. Defendant Gourlie, a Corrections Complaint Examiner, also mishandled Moffett's appeals of his inmate complaints.

**Lawsuit #8:** Defendant Jane Doe #1, a record-keeper at Columbia, fraudulently obtained his signature on some unspecified date. Moffett has not alleged what Doe did with his signature, but he believes that it caused his files to be tampered with.

**Lawsuit #9:** On various occasions, several defendants impeded Moffett's ability to access legal materials. Once defendant Allds denied Moffett a law library pass, even though he knew that Moffett had an ongoing *pro se* lawsuit. Another time, defendant Dunderson, a library officer, told Moffett that defendants Haag and Schmidtnecht wanted to see him, causing Moffett to lose out on law library time for the next two weeks. Also, Welzel failed to respond to Moffett's requests for notary public services.

**Lawsuit #10:** In May and June of 2018, defendant Fosshage started a large-scale conspiracy against Moffett, denying him the chance to shower, attend out of cell activities and refused him various supplies. Moffett also believes Fosshage has been destroying his legal materials that should have been electronically filed for him.

All of these claims are subject to dismissal for two reasons. First, grouping these lawsuits together into one case violates Federal Rules of Civil Procedure 20 and 21. Under Rule 20, plaintiff may join their claims together in one lawsuit if "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same

3

transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1)(A). As the Court of the Appeals for the Seventh Circuit has stated, "[a] litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot." *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 683 (7th Cir. 2012). If a complaint includes unrelated claims against different defendants in violation of Rule 20, a court may order that the lawsuit be severed. *Lee v. Cook Cty., Illinois*, 635 F.3d 969, 971 (7th Cir. 2011); *In re High Fructose Corn Syrup Antitrust Litigation*, 361 F.3d 439, 441 (7th Cir. 2004); *Aiello v. Kingston*, 947 F.2d 834, 835 (7th Cir. 1991). Even when the claims are related, the court has authority under Rule 21 and its inherent authority to sever a lawsuit when it would be unwieldy to allow a plaintiff to maintain so many claims against so many different defendants in a single case. *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) ("[The federal] rules are broad, giving district courts considerable flexibility in managing and structuring civil litigation for fair and efficient resolution of complex disputes."); *Lee*, 635 F.3d at 971; *In re High Fructose Corn Syrup Antitrust Litig.*, 361 F.3d at 441.

Because plaintiff's various claims are unrelated and, even if related his allegations are unwieldy and unmanageable, the court is dismissing plaintiff's complaint under Rules 20 and 21, and directing him to respond to this order explaining how he wishes to proceed on his claims. Only *one* group of claims identified above may proceed under this case number. Therefore, plaintiff must decide which group of claims will proceed under this case number, and whether he wishes to proceed with any other group of claims in these

4

proposed lawsuits. Plaintiff will be required to pay a separate filing fee for each additional lawsuit on which he chooses to proceed.

Regardless how plaintiff chooses to proceed, plaintiff must submit a new complaint that clarifies his claims. Indeed, his current complaint contains vague and disjointed allegations, and plaintiff often omits details about when the events actually occurred and what proposed defendants were involved in the events underlying his claims. Furthermore, plaintiff's complaint is organized by defendant, not by the timeline of" relevant events in chronological order, making it very difficult to follow and respond to. As a result, the complaint violates Rule 8 of the Federal Rules of Civil Procedure because it fails to provide proper notice to defendants of plaintiff's claims against them. Under Rule 8, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." This means that the complaint must provide notice to the defendants of what plaintiff believes they did to violate his rights. Additionally, the complaint must contain enough allegations of fact to support a claim under federal law. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

In sum, before plaintiff may proceed further with any claim, he must respond to this order by:

**(1) identifying which single lawsuit from the list above that he wishes to proceed with under this case number;**

**(2) drafting an amended complaint that complies with Rule 8 and includes only the allegations related to the single lawsuit on which plaintiff will proceed under this case number; and**

**(3) explaining whether he will proceed with any other lawsuits outlined above under new case numbers.**

Plaintiff should draft his amended complaint as if he were telling a story to someone who knows nothing about the events at hand, focusing on providing a timeline of the materials events. He should be sure to identify the specific defendants who are being sued, the specific actions taken by each defendant that plaintiff believes violated his rights and when those events took place. Plaintiff should refrain from including legal arguments and extraneous background information, and instead should focus on laying out the allegations in a chronological fashion. Additionally, plaintiff must be sure to include *all* of his allegations in his proposed amended complaint. After the court receives plaintiff's response, the court will screen his amended complaint and determine whether this case may proceed further.

Finally, plaintiff has renewed his motion for a preliminary injunction, which the court previously denied without prejudice because he is currently incarcerated at WSPF, but his claims are against only defendants working at Columbia. Plaintiff claims that he is still subjected to harassment at WSPF, but he does not suggest that any of the named defendants are involved in that ongoing harassment. Accordingly, the court is denying this motion, again without prejudice to plaintiff's ability to renew it should he be transferred back to Columbia.

ORDER

IT IS ORDERED that:

1) Plaintiff Walter J.D. Moffett's complaint is DISMISSED without prejudice under Federal Rules of Civil Procedure 8, 20 and 21.

2) Plaintiff has until **November 1, 2019,** to respond to this order as directed above.

3) For any lawsuit plaintiff dismisses voluntarily, he will not owe a filing fee and he will be permitted to refile the dismissed claims at a later date, provided that he complies with the applicable statute of limitations.

4) For any additional lawsuit plaintiff chooses to pursue, he will owe a separate filing fee.

5) Once plaintiff chooses which lawsuits he wants to pursue and files an amended complaint, the court will screen the claims to determine whether they state a claim upon which relief may be granted. If plaintiff fails to respond to this order by **November 1, 2019,** the court will dismiss his claims without prejudice for failure to prosecute.

6) Plaintiff's motion for a preliminary injunction (dkt. #19) is DENIED without prejudice.

Entered this 11th day of October, 2019.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge